IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES K. EATON, SR., ) | |
| ) | |
| Appellant, ) | CASE NO. 3:11-1029 |
| ) | JUDGE HAYNES |
| v. ) | |
| ) | |
| FORD MOTOR CREDIT COMPANY, ) | |
| LLC, ) | |
| ) | |
| Appellee. | |

## MEMORANDUM

This action is an appeal by Appellant James Kenneth Eaton, Sr., of the Orders of the Honorable Keith Lundin, Chief Judge of the Bankruptcy Court awarding judgment to Ford Motor Credit Company, Company, LLC ("FMCC") for the proceeds of Eaton's sales of automobiles covered by FMCC's floor plan. (Docket Entry No. 3-18 & 3-24).

### A. Procedural History

On January 21, 2010, FMCC filed a state court action against Eaton and his automobile dealership in the Chancery Court for Coffee County, Tennessee. <u>Ford Motor Credit Co., LLC v. Eaton Auto. Group, Inc. & James. K. Eaton</u>, (Case No. 10-24). FMCC alleged breaches of the floor plan agreement, the security agreement and the continuing guaranty. FMCC sought the immediate possession of the collateral, an order prohibiting the selling of the remaining floor-plan financed vehicles out of trust, and damages. <u>Id.</u> On January 21, 2010, the State Chancery Court issued a temporary restraining order that, in part, restrained Eaton and the dealership from selling the collateral "without consent of Ford Credit and without remitting proceeds of sale to

1

Ford Credit." (Docket Entry No. 28, Trial Ex. No. 7). On February 12, 2010, the state court extended the terms of the January 21st order to protect FMCC during the pendency of the state court action. Id. at Trial Ex. No. 8. The February 12th order also required Eaton and the dealership to "remit proceeds of sale of motor vehicles on Ford Credit's floor [plan] no later than five (5) days from receipt of the proceeds." Id.

In June 2010, notwithstanding the State Court Orders, Eaton stopped remitting proceeds from vehicle sales to FMCC. Eaton informed FMCC agents at the dealership that he planned to withhold the sale proceeds from FMCC, pending resolution of the state court action. FMCC then filed a motion for contempt against Eaton and the dealership seeking immediate possession of FMCC's collateral and the immediate turnover of all unpaid sale proceeds. On August 6, 2010, a day prior to a state court hearing on the contempt motion, the dealership filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Tennessee, In re Eaton Automotive Group, Inc., assigned 4:10-bk-14584.

The state court continued the contempt hearing on Eaton's wrongful acts to September 13, 2010. On September 10, 2010, Eaton filed his voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On January 13, 2011, the Bankruptcy Court allowed Eaton's bankruptcy petition to convert to a Chapter 7 proceeding. The state court action was stayed.

On December 8, 2012, FMCC filed an adversary proceeding against Eaton seeking damages against him and a judgment that Eaton's debt could not be discharged under 11 U.S.C. §§ 523(a)(4) and (a)(6). After a trial, the Bankruptcy Judge ruled that Eaton's debt to FMCC was nondischargeable under § 523(a)(6). (Docket Entry No. 57). On August 15, 2011, the

2

Bankruptcy Judge awarded judgment to FMCC against Eaton in the amount of $233,296.10. Eaton moved to amend the Bankruptcy Court's findings of fact and for additional findings of fact, but the Bankruptcy Judge denied Eaton's motion.

## B. Review of the Record

Eaton was the former president and sole shareholder of Eaton Automotive Group, Inc. ("the Dealership"), an automotive dealership in Tullahoma, Tennessee. Eaton was responsible for the day-to-day operations of the Dealership. On March 9, 2009, Eaton executed an Automobile Wholesale Plan Application for Wholesale Financing and Security Agreement in favor of FMCC ("Floor Plan Purchase Agreement"). Under this agreement, FMCC extended credit by advances to the Easton's dealership to purchase motor vehicles and other merchandise from FMCC. The dealership agreed to repay the advances on demand once the merchandise was sold, leased, or placed in use by the dealership.

Under Section 4 of the floor plan agreement, the dealership granted FMCC a security interest in any existing or acquired automobiles.

> [N]ew, used and demonstrator motor vehicles . . . and in the proceeds and products thereof in whatever form, of any sale or disposition of the Merchandise or other collateral, and in accounts, instruments, chattel paper, general intangibles, contract rights documents and supporting obligations arising from the disposition of the Merchandise or other collateral[.]

(Docket Entry No. 28, Trial Ex. 1 at ¶ 4). FMCC also possessed "a security interest in, all amounts that now or hereafter be payable to Dealer by the manufacturer distributor or seller of any of the Merchandise by way of rebate or refund or any portion of the purchase price thereof." Id. Under Section 5 of the Floor Plan Agreement, as the dealership sold vehicles financed by FMCC, such sale proceeds were to be held in trust until remitted to FMCC.

3

On behalf of the dealership, Eaton also signed a separate security agreement dated March 9, 2009, granting FMCC a valid, perfected and enforceable first priority security interest in his Dealership's: (a) equipment, fixtures, furniture, demonstrators and service vehicles, supplies, and machinery and other goods of every kind; (b) motor vehicles, tractors, trailers, service parts and accessories and other inventory of every kind and any accessions thereto; (c) accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligations; and (d) *the proceeds from such collateral*. (Docket Entry No. 28 at ¶ 11; Trial Ex. No. 2) (emphasis added).

FMCC also had a first priority properly perfected security interest in the collateral described in the Floor Plan Agreement and the Security Agreement. FMCC filed a financing statement with the Tennessee Secretary of State on March 11, 2009. Eaton also signed a continuing guaranty dated March 9, 2009, under which Eaton personally guaranteed the dealership's obligations under the Floor Plan Agreement and the Security Agreement.

In 2003, during an audit, FMCC discovered that Eaton, as an officer and agent of the Dealership, sold several vehicles out of trust without remitting $191,471.06 in unpaid sale proceeds to FMCC. In October and December 2009, FMCC demanded Eaton to stop selling floor-plan financed vehicles out of trust and to remit any unpaid proceeds to FMCC for vehicles that the dealership had already sold out of trust. The dealership was unable to comply and FMCC issued written notice to the dealership and Eaton on January 4, 2010 demanding its collateral under the wholesale financing plan for the dealership, effective March 31, 2012.

On August 19, 2010 a Chapter 11 Trustee was appointed for the dealership's bankruptcy. Eaton provided FMCC's counsel with a written accounting with eighteen (18) vehicles sold out

4

of trust at the Dealership from December 2009 through August 2010, for total trust proceeds of $380,004.96. FMCC's business records reflected unpaid sale proceeds of $380,004.96. (Trial Ex. No. 10).

After the Trustee's unsuccessful attempt to operate the dealership, on December 2, 2010, FMCC sought a stay in the dealership bankruptcy proceeding to locate its unsold collateral at the dealership. FMCC secured possession of those vehicles. Eighteen (18) vehicles were originally sold out of trust and FMCC received a $24,967.64 payment from the Chapter 11 Trustee. FMCC sought damages only for Eaton's sales of the seventeen (17) vehicles that were sold out of trust.

### C. Conclusions of Law

To preclude the discharge of a debt in a bankruptcy proceeding, under § 523(a)(6), a creditor must prove "a deliberate or intentional injury" to preclude the discharge of a debtor's debt. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). When the debtor believes a voluntary act will cause harm that is substantially certain to occur, such acts satisfies the "willful and malicious injury" definition in § 523(a)(6). Markowitz v. Campbell, 190 F.3d 455, 464 (6th Cir. 1999). Yet, the debtor must "believe injury is substantially certain to occur as a result of his behavior." Guthrie v. Kokenge (In re Kokenge), 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002).

An act is "willful" under § 523(a)(6) if the act is undertaken with the actual intent to cause injury. Cash Fin. Servs. v. Fox (In re Fox), 370 B.R. 104, 119 (B.A.P. 6th Cir. 2007). A creditor may establish a "willful" act by circumstantial evidence. J&A Brelage, Inc. v. Jones (In re Jones), 276 B.R. 797, 802 (Bankr. N.D. Ohio 2001). An act is "malicious" under § 523(a)(6) if undertaken "in conscious disregard of one's duties or without just cause or excuse." Wheeler v. Laudani, 783 F. 2d 610, 615 (6th Cir. 1986). Malicious acts do not "require ill-will or specific

5

intent to do harm." Id.

Under Tennessee law, conversion "is the appropriation of a the thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's rights." Mammoth Cave Prod. Credit Ass'n v. Oldham, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977). "The main focus of the tort is the interference with an owner's property right[] [and] [t]he degree of this interference, as well as the impact on the property, determines whether there has been conversion." Gen. Elec. Credit Corp. v. Kelly & Dearing Aviation, 765 S.W.2d 750, 753 (Tenn. Ct. App. 1988).

A debtor acting as an officer of a corporation, who actively converts property that is subject to the security interest of a third party, is personally liable to the injured party and the debt is nondischargeable under § 523(a)(6). Bombardier Corp. v. Penning (In re Penning), 22 B.R. 616, 619 (Bankr. E.D. Mich. 1982). Under § 523(a)(6), the business person is held to a higher standard as a business person who is more knowledgeable of the natural consequences of his acts. Trust Co. Bank v. Ricketts (In re Ricketts), 16 B.R. 833, 834-35 (Bankr. N.D. Ga. 1982). In such instances, the officer or director of the corporation is held liable as an actor, not as corporate officer. Id.

In the automotive sales industry, a dealer's sale of automobile inventory without paying the secured lender is known as selling "out of trust." Ford Motor Credit Co. v. Moody (In re Moody), 277 B.R. 865, 868 (Bankr. S.D. Ga. 2001). A willful and malicious conversion occurs where an individual in bankruptcy obtains vehicles, as an officer of a dealership, with money advanced by a secured creditor, and then disposes of those vehicles without remitting the sale proceeds to the secured creditor. Such acts are contrary to the parties' floor plan agreement's

6

express provisions. A debtor's sales out of trust creates a debt that is nondischargeable under § 523(a)(6). Ford Motor Credit Co. v. Owens, 807 F.2d 1556, 1559 (11th Cir. 1987). Under § 523(a)(6), malice is inferred when a car dealer knows the harm for his failure to remit the proceeds vehicles sold out of trust. Id. See also Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley), 235 B.R. 651, 656-58 (B.A.P. 10th Cir. 1999); HOC, Inc. v. McAllister (In re McAllister), 211 B.R. 976, 982-83 (Bankr. N.D. Ala. 1997).

On appeal, Eaton does not present any evidence that the Bankruptcy Judge erred in its holding that Eaton caused a willful and malicious injury to FMCC under § 523(a)(b). Aside from the floor plan agreement, the state court orders support the Bankruptcy Judge's finding "that Mr. Eaton knew, with certainty, what his obligations were to Ford Motor Credit Corporation when the dealership sold a car. And he knew that he had five days to remit the – proceeds to Ford Motor Credit." (Docket Entry No. 22-1, Tr. at 16).

Moreover, Eaton had thirty-five years of experience in the automobile dealership industry and was well aware of his obligations under the floor plan agreement to FMCC. Yet, beginning in June 2010, Eaton told FMCC's agents monitoring the dealership that he would not remit any sale proceeds to FMCC even despite the state court orders. Such undisputed facts support the Bankruptcy Judge's conclusion that Eaton willfully and maliciously violated the state court orders. The Bankruptcy Judge reasonably concluded that Eaton acted in complete disregard of his duties to FMCC under the floor plan financing agreements and in violation of the state court orders. See Wheeler, 783 F.2d at 615.

On appeal, Eaton argues that FMCC was required to "trace" the unpaid sale out of trust proceeds under Tenn. Code Ann. §47-9-315, as part of its proof at trial. (Docket Entry No. 21,

7

Appellant Br. at 18). This defense was not in Eaton's answer nor presented at trial in the Bankruptcy Court. This issue is not listed on the statement of issues for this appeal. Issues that are not listed in a statement of issues on appeal, are deemed waived. Smith v. H.D. Smith Wholesale Drug Corp. (In re McCombs), 659 F.3d 503, 510 (5th Cir. 2011); City Sanitation, LLC v. Allied Waste Servs., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 90-91 (1st Cir. 2011). Under the Federal Bankruptcy Code, FMCC's only burden was to show that the Defendant acted "willful[ly] and malicious[ly]" to injure FMCC. 11 U.S.C. § 523(a)(6) (2010). The Bankruptcy Court found that FMCC satisfied this burden. The cited state law cannot trump an express bankruptcy statute or nondischargibility.

Moreover, FMCC and Eaton stipulated to the amount of the identifiable sales out trust proceeds at issue for purposes of trial and to the underlying documents supporting said calculations. (Trial Ex. No. 28 at ¶¶ 2, 24, 29). The parties also stipulated to FMCC's valid security interest in such proceeds. Id. at ¶¶ 9, 11, 12. Courts enforce such stipulations, see Envtl. Abatement, Inc. v. Astrum R.E. Corp., 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000); State v. Ford, 725 S.W.2d 689, 691 (Tenn. Crim. App. 1986), that eliminate the necessity of proof of the facts stipulated. Brown v. McCulloch, 144 S.W.2d 1, 4 (Tenn. Ct. App. 1940). A party may not raise as an issue on appeal, a fact that the party previously stipulated at trial. State v. Wiseman, 643 S.W. 2d 354, 364 (Tenn. Crim. App. 1982).

Eaton next argues that his "dominant motivation was not to injure FMCC . . . but to engage in acts both protective of FMCC's collection prospects and in the best interests of all creditors and the company." (Docket Entry No. 21, Appellant Br. at 2). Eaton cites the Ninth Circuit's decision, Transamerica Commercial Fin. Corp. v. Littleton Transamerica Commercial

8

Fin Corp. v. Littleton, 942 F.2d 551 (9th Cir. 1991), to argue that his intentional use of collateral proceeds is outside of the "wilful and malicious" language of the Bankruptcy Code. (Docket Entry No. 21, Appellant Br. at 30). Yet, in Littleton, the creditor had knowledge of the sale out of trust condition of the debtor's business and "acquiesce[d], at least to some extent, in the conduct of the debtors with respect to the sold-out-of-trust condition." Littleton v. Moore (In re Littleton), 160 B.R. 632, 639 (B.A.P. 9th Cir. 1989). Unlike Littleton, FMCC did not consent to Eaton's sales out of trust of FMCC's collateral. FMCC cancelled its wholesale financing for the Dealership and filed the state court action upon learning of Eaton's sales. (Docket Entry No. 28 at ¶¶ 14, 15, 16). FMCC also obtained a restraining order that is inconsistent with any acquiesce to Eaton's cited conduct. In the Sixth Circuit, a debtor's desire to save his business is not dispositive of whether a debtor intended to harm a creditor under § 523. Gen. Motors Acceptance Corp. v. Cline, 431 B.R. 307, No. 08-8104, 2010 WL 22334, at *9 (B.A.P. 6th Cir. Jan. 6, 2010).

Eaton's next argument is that the State Court orders were "vague and ambiguous" and cannot serve as a basis for FMCC's judgment. Eaton failed to raise this issue at trial or in his statement of issues to be presented on appeal. (Docket Entry No. 44). Thus, the contention is waived. See In re Am. Cartage, Inc., 656 F.3d at 90-9. In any event, Eaton complied with the state court orders in February, March, April and May of 2010, until June 2010 when Eaton stopped remitting the proceeds until the filing of his bankruptcy petition. This claim lacks merit.

Eaton next argues that the Bankruptcy Court erred in refusing to offset and/or credit certain funds against the damages awarded. Eaton contends that "[f]or reasons that are not apparent, the Bankruptcy Court gave no credit for these monies." (Docket Entry No. 21,

9

Appellant Br. at 35). First, Eaton failed to submit any proof at trial that FMCC received any of the referenced monies or that FMCC failed to account for any recoveries from the Debtor or the dealership. Eaton had an opportunity to refute FMCC's proof at the trial or to submit proof to mitigate the damages. Eaton opted not to do so. This claim lacks merit.

Eaton next argues that the Bankruptcy Court lacked constitutional authority to hear the nondischargeability issue and "issue a final order adjudicating a state law conversion action...." (Docket Entry No. 21, Appellant Br. at 36) (citing Stern v. Marshall, 131 S. Ct. 2594 (2011)).[1] The Defendant contends Stern holds that Bankruptcy Judges lack constitutional authority to enter final judgments on any state law counterclaims. Stern held that as an Article I court, a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim" in a bankruptcy proceeding. Id. at 2620. Here, the Bankruptcy Court did not issue a final judgment on a state law issue, but under federal law, §523(a)(b), as part of a bankruptcy proceeding. Further, Eaton never asserted a state law counterclaim against FMCC in the adversary proceeding.

In 28 U.S.C. § 1334(b) (2010), Congress granted nonexclusive subject matter jurisdiction to the district court over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Congress also authorized each district court to refer such proceedings to a bankruptcy judge. Id. § 157(a). The bankruptcy court may hear and determine

---

[1] As previously referenced in this brief, acts of conversion can serve as a basis for a determination of nondischargeability under § 523(a)(6). 124 Cong. Rec. H. 11113, H. 11114 (Sept. 28, 1978) (The phrase "willful and malicious injury" in § 523(a)(6) "covers a willful and malicious conversion.").

10

such proceedings, and if the particular action involves a "core proceeding" as defined in § 157(b)(2), the bankruptcy judge may enter "appropriate orders and judgments subject to [appellate] review under section 158 of [title 11]." Id. § 157(b). A "determination[] as to the dischargeability of particular debts" is expressly included in the statutory list of "core proceedings" as defined by the Bankruptcy Code. Id. § 157(b)(2)(I). Here, FMCC's adversary complaint sought a determination of its claims under several subsections of § 523 that vests subject matter jurisdiction in the district court and by referral in the bankruptcy court.

The scope of a debtor's discharge is a fundamental part of the bankruptcy process. Congress clearly envisioned that bankruptcy courts would determine all core proceedings, including, as relevant here, "determinations as to the dischargeability of particular debts." Id. The Supreme Court has never held that bankruptcy courts are without constitutional authority to hear and finally determine whether a debt is dischargeable in bankruptcy. Stern implied that bankruptcy courts possess such authority when the Court stated that bankruptcy courts had the constitutional authority to decide state law counterclaims if the counterclaims were necessary to decide allowance of claims. 131 S. Ct. at 2618.

Courts hold that the bankruptcy courts have the statutory authority to enter a judgment against a debtor on a nondischargeable debt. See, e.g., Islamov v. Ungar (In re Ungar), 633 F.3d 675, 680 (8th Cir. 2011); Johnson v. Ribesell (In re Ribesell), 586 F.3d 782, 793 (10th Cir. 2009); Morrison v. W. Bldg. of Amarillo, Inc. (In re Morrison), 555 F.3d 473, 479 (5th Cir. 2009); Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 874 (9th Cir. 2005). Post-Stern courts have similarly held. Christian v. Soo Bin Kim (In re Soo Bin Kim), Bankr. No. 10-54472-C, 2011 WL 2708985, slip op. at *2 (Bankr. W.D.Tex. July 11, 2011) (bankruptcy court had power

to enter a final judgment concerning an exception to discharge as well as to liquidate the underlying claim).

Since 1970, the Bankruptcy Judges in this District have acted under reference from the district court and possess the exclusive authority to determine the dischargeability of debts under § 523(a)(2), (4) and (6). 11 U.S.C. § 523(c)(1) ("the debtor shall be discharged from a debt of the kind specified in [§ 523(a)(2), (4) and (6)] unless . . . after notice and a hearing, the [bankruptcy] court determines such debt to be excepted from discharge . . ."). Eaton's argument under <u>Stern</u> that the Bankruptcy Court lacked authority to enter a final judgment in this action, is misplaced.

For these collective reasons, the Court affirms the Bankruptcy Judge's findings and conclusions.

An appropriate Order is filed herewith.

**ENTERED** this the ___17___ day of August, 2012.

WILLIAM J. HAYNES, JR.
United States District Judge